IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADVANCED TECHNOLOGY
SERVICES, INC.,
    Plaintiff,

    v.

KM DOCS, LLC, et al.,
    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-3121-TWT

ORDER

This is a breach of contract action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 4]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss.

I. Background

The Plaintiff, Advanced Technology Services, Inc. ("ATS"), sells a document imaging software program called OptiDoc. (Compl. ¶ 5.) OptiDoc is a complete document management program that integrates with other software packages. (Mischke Aff. ¶¶ 7-8.) The Defendants Miles Waldron and Harvey Heath are both former employees of ATS. Waldron was a lead software engineer for ATS and had access to the source code for OptiDoc while employed by ATS. (Compl. ¶¶ 7 & 11.)

While at ATS, Waldron signed a Trade Secrets Agreement and a Non-Competition, Non-Solicitation and Non-Disclosure Agreement. (Compl. ¶ 10.) Waldron resigned from ATS on June 1, 2010 (Compl. ¶ 12) and Heath resigned on or about July 7, 2010. (Compl. ¶ 13.) On July 17, 2010, Waldron and Heath announced their company KM Docs with screen shots of their software Doc Unity and Doc DNA. (Compl. ¶ 14.) Doc Unity and Doc DNA are document imaging products that compete with ATS' OptiDoc software. ATS states that Doc Unity and Doc DNA are similar in look and function to OptiDoc. (Compl. ¶¶ 14-15.) The Plaintiff alleges that "[d]efendants Heath and Waldron conspired together during the last year of employment with ATS to unlawfully take, misappropriate and steal the OptiDoc software." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 5.)

The Complaint was removed to this Court on September 15, 2011. The Plaintiff brings claims for Misappropriation, Conversion, Tortious Interference with Waldron's Contract, Tortious Interference with ATS' Contract with Customers, Breach of Contract (Count V), Fraud (Count VI), Violation of the Georgia RICO Act (Count VII), Injunctive Relief, Breach of Fiduciary Duty to ATS (Count IX), Theft of Corporate Opportunity, Conspiracy, Punitive Damages, Attorneys' Fees, and Copyright Infringement. The Defendants' Motion to Dismiss [Doc. 4] asks the Court to dismiss Counts V, VI, VII, and IX.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S. Ct. at 1964).

## III. Discussion

### A. Count V: Breach of Contract

The Plaintiff alleges that the Defendant Waldron breached his contracts with ATS. These contracts are 1) a Trade Secrets Agreement and 2) a Non-Solicitation, Non-Disclosure and Non-Competition Agreement. The Non-Competition Agreement alone seeks to enforce its terms against Waldron worldwide. A non-competition agreement lacking a geographical limitation is unenforceable. See Firearms Training Systems, Inc. v. Sharp, 213 Ga. App. 566 (1994); Owens v. RMA Sales, Inc., 183 Ga. App. 340 (1987). Thus, the Non-Competition Agreement is unenforceable.

The Defendants maintain that because the Non-Competition Agreement is unenforceable, the Non-Solicitation and Non-Disclosure agreements are unenforceable as well. The Defendants argue that because the Non-Competition Agreement contains a term ("Specified Activities") that requires reference to the other two covenants, the severability provision is immaterial. The Court does not find this argument convincing. The Non-Solicitation and Non-Disclosure agreements can stand on their own as separate agreements; because the parties did not take the time to redefine the term "Specified Activities" each time does not mean that the parties did not intend to give any effect to the severability provision to which they explicitly agreed. When determining whether a contract is severable or not, the Court must

consider the intention of the parties. O.C.G.A. § 13-1-8(b). The Court believes that the contract's plain language makes clear that the parties intended to create a severable contract.

Only the claim for breach of contract arising from the Non-Competition Agreement is dismissed. The Plaintiff's claims for breach of contract arising from the Trade Secrets Agreement, Non-Solicitation Agreement, and Non-Disclosure Agreement survive this motion.

B.  Count VI: Fraud

The Defendants argue that the Plaintiff has not stated a claim for fraud with sufficient particularity. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The plaintiff's complaint must allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who engaged in them." Cooper v. Blue Cross and Blue Shield of Fla., 19 F.3d 562, 568 (11th Cir. 1994); Mathis v. Velsicol Chem. Corp., 786 F. Supp. 971, 976-77 (N.D. Ga. 1991) (dismissing allegation of fraud where it "[did] not state with particularity the specific situation involved, *i.e.*, who, what, when, where and how"). This heightened pleading requirement serves to inform defendants of the "precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and

fraudulent behavior." Durham v. Business Management Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (citations and quotations omitted). "Its clear intent is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985).

However, Rule 9(b) must not be read to abrogate Rule 8(a) requiring notice pleading. Id. "[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading." Id. The heightened pleading standard may also be relaxed if the factual information that is the basis of the claim is peculiarly within the defendant's knowledge or control. United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755 F. Supp. 1040, 1052 (S.D. Ga. 1990).

The Plaintiff directs the Court to consider the affidavit of its CEO, Maureen Mitchell, which is attached to its Complaint. This is permissible. "A complaint that fails to describe particularized fraudulent acts can still comply with Rule 9(b) if it can be read together with other documents in the record to establish specific allegations of fraud." Georgia Farm Bureau Mut. Ins. Co. v. Great Am. Excess & Surplus Ins. Co., Civ. A. No. 1:06-CV-0696-JOF, 2007 WL 757816, at *3 (N.D. Ga. Mar. 8, 2007) (citing Durham, 847 F.2d at 1512 (finding that Rule 9(b) was satisfied where the

complaint, combined with an affidavit, detailed specific instances of the alleged fraud)).

Here the Plaintiff has alleged sufficient facts in the Complaint and the attached affidavit to survive this Motion to Dismiss. The Plaintiff has stated with particularity the details of the alleged fraud. The Plaintiff states that the Defendant Waldron committed the fraud (Compl. ¶ 43) by misrepresenting to Ms. Mitchell that he sought the OptiDoc source code to modify OptiDoc (Mitchell Aff. ¶ 31), when in fact he intended to, and succeeded in, using the OptiDoc source code to finalize his own software, Doc DNA and Doc Unity, for KM Docs. (Compl. ¶ 16.) The Plaintiff successfully pleads a claim for fraud.

### C. Count VII: Violation of the Georgia RICO Act

A private cause of action is created in favor of persons injured by violations of O.C.G.A. § 16-14-4(a), which provides that: "It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." The Act further provides that a "pattern of racketeering activity" means "engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or

methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents engaging in at least two incidents of racketeering activity." O.C.G.A. § 16-14-3(8)(A).

The parties agree that the Plaintiff has alleged at least one criminal act that qualifies as "racketeering activity." The parties dispute whether the Plaintiff has alleged four separate criminal acts, which would trigger Georgia's RICO Act, or only one, which would not trigger the Act. The Plaintiff argues that it has alleged four separate criminal acts in the Complaint, which are:

> (1) taking and unlawfully using OptiDoc software and source code while an employee and using it for the KM Docs software (Compl. ¶ 18); (2) taking and unlawfully using software code or programs written by Waldron while an employee of ATS for OptiDoc that was never submitted to ATS or incorporated into OptiDoc (Compl. ¶ 17); (3) writing any or all of Doc Unity and Doc DNA while an employee of ATS but then unlawfully taking that software and selling it as KM Docs rather than turning it over to ATS (Compl. ¶ 16); and (4) taking OptiDoc software and source code after termination as an employee after making false representations as to the use of the OptiDoc source code. (Compl. ¶ 16.)

(Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 9-10.) The Defendants argue that the Plaintiff has alleged four acts associated with the same transaction, which they consider to be one act for purposes of the Georgia RICO Act. The Defendants characterize this alleged transaction as the "Defendants stole source code and/or software and used this source code/software to create a new product which caused

harm." (Defs.' Br. in Supp. of Mot. to Dismiss, at 11.)

To support their legal argument, the Defendants refer the Court to <u>Stargate Software Int'l, Inc. v. Rumph</u>, 224 Ga. App. 873 (1997). In <u>Stargate</u>, the plaintiff alleged that defendants had committed two or more predicate acts by taking computers, data, and records, and then, at a separate time, using and altering them to plaintiff's injury. <u>Stargate</u>, 224 Ga. App. at 877. The court dismissed the Georgia RICO claim, stating that "the fact that elements of two crimes may have been present at two separate points in time does not create two predicate acts out of what is in reality a single transaction." <u>Id.</u> (citing <u>Brown v. Freedman</u>, 222 Ga. App. 213, 217-18 (1996)). The Court acknowledges this case, but also reads the plain language of the statute to define a "pattern of racketeering activity" as "at least two acts of racketeering activity in furtherance of *one* or more...*schemes*, or *transactions*..." O.C.G.A. § 16-14-3(8)(A) (emphasis added).

Even under the Defendants' view of the law, the Court is not prepared to dismiss the RICO claim on this motion. Without discovery, the Court cannot say whether the alleged criminal acts were part of the same transaction. For example, if the Defendants made distinct and separate uses of the allegedly stolen source code, the Court would be hard-pressed to say that these distinct uses were part of the same transaction.

D.  Count IX: Breach of Fiduciary Duty to ATS

The Plaintiff alleges that Heath was a director at ATS and violated his fiduciary duty as a director. The Plaintiff further alleges conduct that could violate a director's fiduciary duty. Whether or not Heath was subject to a fiduciary duty or violated such a duty shall not be resolved on this Motion to Dismiss.

IV.  Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss [Doc. 4].

SO ORDERED, this 21 day of November, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge