IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADVANCED TECHNOLOGY
SERVICES, INC.,
   Plaintiff,

   v.

KM DOCS, LLC, et al.,
   Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-3121-TWT

ORDER

This is an action for copyright infringement. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 42]. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment [Doc. 42]. The Court declines to exercise supplemental jurisdiction of the remaining state law claims and the action is remanded to the Superior Court of Fulton County.

I. Background

The Plaintiff, Advanced Technology Services, Inc. ("ATS"), sells a document imaging software program called OptiDoc. (Compl. ¶ 5.) OptiDoc is a complete document management program that integrates with other software packages.

(Mischke Aff. ¶¶ 7-8.) The Defendants Miles Waldron and Harvey Heath are both former employees of ATS. Waldron was a lead software engineer for ATS and had access to the source code for OptiDoc while employed by the company. (Compl. ¶¶ 7 & 11.) While at ATS, Waldron signed a Trade Secrets Agreement and a Non-Competition, Non-Solicitation and Non-Disclosure Agreement. (Compl. ¶ 10.) Waldron resigned from ATS on June 1, 2010 (Compl. ¶ 12) and Heath resigned on or about July 7, 2010. (Compl. ¶ 13.) On July 17, 2010, Waldron and Heath announced their company KM Docs with screen shots of their software DocUnity and DocDNA. (Compl. ¶ 14.) DocUnity and DocDNA are document imaging products that compete with ATS' OptiDoc software. ATS states that DocUnity and DocDNA are similar in look and function to OptiDoc. (Compl. ¶¶ 14-15.) The Plaintiff alleges that "[d]efendants Heath and Waldron conspired together during the last year of employment with ATS to unlawfully take, misappropriate and steal the OptiDoc software." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 5.)

The Complaint was filed in the Superior Court of Fulton County, Georgia on September 8, 2011, and was removed to this Court on September 15, 2011 [Doc. 1]. The Plaintiff brings claims for Misappropriation, Conversion, Tortious Interference with Waldron's Contract, Tortious Interference with ATS' Contract with Customers, Breach of Contract, Fraud, Violation of the Georgia RICO Act, Injunctive Relief,

Breach of Fiduciary Duty to ATS, Theft of Corporate Opportunity, Conspiracy, Punitive Damages, Attorneys' Fees, and Copyright Infringement. The Court granted in part and denied in part the Defendants' Motion to Dismiss in its Order of November 21, 2011 [Doc. 11]. The Defendants filed this Motion for Summary Judgment on February 4, 2013 [Doc. 42].

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

A.    Copyright

The Plaintiff alleges that the Defendants' DocUnity/DocDNA product infringed on its copyright for OptiDoc. To maintain a claim for copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Feist Publications, Inc. v. Rural Telephone Serv. Co., 499 U.S. 340, 361 (1991). The second prong requires the Court to consider: "1) whether the defendant, as a factual matter, copied portions of the plaintiff's program; and 2) whether, as a mixed question of fact and law, those elements of the program that have been copied are protected expressions and of such importance to the copied work that the appropriation is actionable." MiTek Holdings, Inc. v. Arce Eng'g Co., 89 F.3d 1548, 1554 (11th Cir. 1996). Proof of actual copying may be shown by direct evidence or by inferences drawn from indirect evidence demonstrating that a defendant had access to the copyrighted work and that probative similarities exist between the allegedly infringing work and the copyrighted work. Id. In addition to copying, infringement only occurs if the copied portions satisfy the constitutional requirement of originality. Id.

"[I]n order for a plaintiff to prevail...the court must find...that the copying of the copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." Id. "Substantial similarity exists where an

average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir. 1982) (internal quotations omitted). "[P]roof of access and substantial similarity raises only a presumption of copying which may be rebutted by the defendant with evidence of independent creation." Id.

The Eleventh Circuit recognizes a distinction between literal and nonliteral elements of copyrighted works. "The 'literal elements' of a computer program are its source and object code." MiTek, 89 F.3d at 1556 n.15. "'[N]onliteral elements' of a program...are the products that are generated by the code's interaction with computer hardware and operating program(s). Examples of nonliteral elements of a computer program include its screen displays and the main menu and submenu command structure tree contained thereon." Id. Nonliteral elements are held to a higher standard than being substantially similar; nonliteral elements must be "virtual[ly] identical[]" to be found infringing. Id. at 1558.

Without examining the Defendants' source code, the Plaintiff does not have direct evidence of copying.[1] The Plaintiff must therefore demonstrate indirect

---

[1] Steven Bales, an ATS employee, stated that a source code comparison would be a reasonable and scientific way of comparing similarities between the two products, and would tell someone a lot more than visually comparing screen shots. (Bales Dep. at 30.)

evidence of copying, by showing that the Defendants had access to OptiDoc and that OptiDoc and DocDNA/DocUnity are substantially similar. Although the Plaintiff has shown that the Defendants had an opportunity to access the OptiDoc source code, the Plaintiff has not shown that the two products are substantially similar.

ATS' President, Maureen Mitchell, swore that the two products were practically identical in function and appearance. (Mitchell Aff. ¶¶ 14-16.) However, it is unclear upon what Ms. Mitchell bases her opinion. ATS has not examined the source code or optic code, so they have foregone the opportunity to compare the two products' literal elements.[2] None of the Plaintiff's representatives have even seen an actual working version of the Defendants' software product. (Mitchell Dep. at 97.) ATS has not retained an expert to testify as to the similarity of the two products. As far as the nonliteral elements are concerned, ATS has not come close to demonstrating that the two products are "virtually identical." Ms. Mitchell based her opinion of similarity

---

[2] The Plaintiff's employee and affiant, Don Mischke, "is of the opinion that Defendant's source code would have likely been modified such that it would no longer resemble source code used by ATS in August, 2010, particularly since Plaintiff had notified Defendants of their intent to file this action." (Mischke Aff. ¶ 10.) Nevertheless, the Plaintiff, believing that the evidence of copyright infringement was soon to be destroyed by the Defendants, waited approximately a year to file its Complaint, and did not file a preliminary injunction. The Plaintiff then did not conduct an examination of the Defendants' source code or object code, speculating that such an exercise would likely be futile.

upon a screen shot of DocUnity/DocDNA, without having actually used the product.[3] At her deposition, Ms. Mitchell herself admitted that she was "[p]robably" not qualified to render the opinion that OptiDoc and DocUnity/DocDNA appeared similar, and that she could not say that DocUnity/DocDNA was a copy of OptiDoc, nor could she say that DocUnity/DocDNA was substantially derived from OptiDoc. (Mitchell Dep. at 153, 157.)

The Plaintiff's designated technical witness, Don Mischke, similarly has not examined the source code or used a working version of the DocUnity/DocDNA software. After viewing YouTube videos, Mr. Mischke concluded that the Defendants' product is inferior to OptiDoc, and "[doesn't] really have much of the functionality that OptiDoc has, but they're trying to. They allude to things." (Mischke Dep. at 68.) The Plaintiff's evidence has not created a jury question regarding whether the two products are virtually identical or even substantially similar. Therefore, the Court grants summary judgment on the Plaintiff's claim for copyright violation.

B.   Supplemental Jurisdiction

---

[3] Mr. Bales stated that screen shots would reveal nothing about product functionality because the images can be easily manipulated. (Bales Dep. at 28.) Mr. Bales further stated that it was "very possible" that other document management software looks similar. (Bales Dep. at 38.)

The Court has supplemental jurisdiction with respect to the remaining state law claims. The Court has discretion pursuant to 28 U.S.C. § 1367(c) to decline to exercise jurisdiction as to these claims. The interpretation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 et seq., and the definition of "trade secret" contained therein, is a matter of state law clearly within the competence of the state courts. Therefore, this action is remanded to the state court. The Defendants' Motion for Summary Judgment as to the remaining state law claims is denied without prejudice. The motion may be renewed in state court.

## IV.  Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Summary Judgment [Doc. 42]. This action is remanded to the Superior Court of Fulton County.

SO ORDERED, this 9 day of April, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge